oral argument not to exceed 15 minutes per side. Mr. Thomas for the defendant appellate. Yeah. Yeah.  Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. May proceed. We would request that we be allowed to reserve five minutes for rebuttal. All right. Yeah, your honor. His name is Robert Thomas here for the appellant call here. Your honor. This was a matter that was tried back in July of 2012 where Mr. The result of a jury trial. Mr. Han was convicted of being a felon in possession of seven firearms and also, um, possession with intent of powder cocaine and cocaine base. Your honor, based upon the jury verdict in that matter, in the subsequent sentencing of Mr. Han, 51 months of incarceration, we filed this instant appeal challenging not only the conviction, but the sentence that was imposed. Um, also, your honor, with regards to his case, we there was a challenge, um, with regards to, we had an issue with regards to there being a denial of a pointed on the case, your honor. But, um, we would submit that the court committed error in denying that motion to suppress as well. Counsel, could I ask a question? You raise a number of issues and of course they're all preserved. Could you address the most, the strongest one? I believe the strongest, strongest issue and that's, that's kind of two, right? The two. The first I was to make the issue with regards to the denial of the submission of evidence regarding a subsequent search of a resident, the residents that was located next door, um, to the risk or didn't allow that evidence. No, your honor. Um, in that what occurred was the investigator, chief investigator long on that matter was questioned with regard to that search and testify that he was not involved with regards to the search of that residence. There was an investigator that was subpoenaed and we found out during trial that that, um, investigator was unavailable because he was away on vacation. Um, based upon that information, we attempted to submit certified documents from the Madison County circuit court showing that when they went next door to the residence located at 510 Greenwood and they went there looking for the defendant, Mr. Heron in this matter. Um, once they were there, um, they located two individuals inside the premises who allowed them to come in and look for Mr. Heron in that residence. While they were there, they found, um, hydrocodone pills, crack cocaine and powder cocaine inside the residence, which were the same substances they found inside the residence at 512 Greenwood where the search was conducted. How is that relevant to the, to his case? There was testimony, your honor, in his case that the residence at 512 Greenwood was not secure. It could be in it. No, there were no locks on the door. There was a panel that covered the back door. They tried to keep people out, but he tested Mr Heron testified that he had had trouble keeping people from being able to come and go in the residence. Um, I'm still not seeing what the relevance is. The relevance was our contention was that that house was being used by other people in the neighborhood to store drugs. Which house? The one that the 512 Greenwood 12 is the one that applies to your client applies to my client. Yes, your honor. But and you want it. We allow evidence of what what was in the house next door because the house because 512 is the one that's relevant to your client. You want to admit evidence of 5 10 contents because 5 12 had an open back door. Is that the idea? Because yes, your honor, because it had opened back. I'm not seeing the relevance then. I mean, well, what it was is it was to show that Mr Heron didn't did not have any knowledge of these drugs being present at 5 12 and that our theory of the house being used by other people in the neighborhood to store drugs. That was our defense's theory in the case. Having stuff somewhere else show that 5 12 was a sword storage place. Well, I think it goes towards showing that the neighbors would have access to the residents and to find that they found the exact the same exact substances right next door is what the access is demonstrated by. Well, I think there's a similar. I think that goes towards the access, your honor. I think another part of it is the testimony from the investigators that other individuals who were not known to them, they saw enter, come and go from that home at 5 12 during the time when they had surveillance on our review of the of the evidentiary exclusion on an abuse of discretion basis. I believe it is your honor. I mean, how is it an abuse? I mean, I could, I mean, it's a little bit hard for me to grasp the connection, but at least it was within the discretion of the judge to say that there was no, no connection. Well, I believe so, but I'm sorry. I believe so. But I, it is a abuse of discretion. Our position is that the error wouldn't be harmless because it prevented the defense from being able to present an adequate, um, adequate defense in the case. It prevented the defendant present any evidence whatsoever. I mean, it has to be related to the case, right? I mean, I understand that. Yeah, I believe based upon our defense and in the testimony that followed from not only Mr Heron, but also from the owner of the house in this person about the problems that they that they had had with the house not being secure. I think that went directly towards the defense's theory with regards to other people accessing the house and using the house and, um, for the storage of these type of unlawful items. What about your other argument? The other strong argument? I know you make a number of arguments. The other argument, Your Honor, went towards the sentencing, um, in the matter. Um, more specifically, the possession, um, possession of the firearms in connection with another felony offense and increased by another four levels for the number of firearms that were found in the home. Our position with regards to those issues were that, first of all, there was no showing, um, that the firearms were in the home. There was no showing that there were felony drug offenses. Um, there was... The fact that they're located in a house that has a lot of drug paraphernalia in there sufficient? No, Your Honor. Actually, there's case law that says that just being located in the home is not, um, enough to, to find that the firearms were used... He had 12 firearms, two of which were loaded and a lot of drugs. So it's not like there's some drugs upstairs and there's a pistol, you know, in the, in the, in the pantry or something like that. I mean, it's... Well, they actually... Substantial amount of drugs and firearms, right? In a, in a... Yes, Your Honor. In a house that's not that big. Well, they, actually, the... I believe in the, the sentencing in the district court turned upon the finding of, of some ammunition with, um, that was located close to some of the unlawful substances because I believe all the firearms were actually... The firearms were found in a room upstairs and they were 12 in all, 10 were in one bag, two were in another bag. Our... Two don't make 12, though. Two in 10... You say there were 12 in all? 12 in all. 10 in one bag. 10 in one bag. 10 in a bag in the upstairs bedroom and two in a hall closet, which... A lot of firearms. Yes, Your Honor, I agree. And... It doesn't sound like he's a collector or something, Your Honor. Well, there was some testimony about how the, where the firearms came from and how the firearms got there. Mr. Heron himself testified that the, the firearms were put there without his knowledge by an individual by the name of Timothy Spencer. Mr. Spencer testified that he traded the firearms to Mr. Heron in exchange for crack cocaine. There was evidence from which the judge could conclude that it was Mr. Heron's guns. Yes, Your Honor. There are two different guidelines and I admit I'd have to go back and look. One requires possession of the firearms in conjunction with the offense. Another requires use of those in conjunction with the transaction. What was the guideline standard here? Your Honor, I believe in this matter, the standard was to be found in connection with another felony offense. There are some different theories. You have the fortress theory, which says that if the firearms are being used to embolden the defendant or you can use, show that they are evidence. We, we argued in our position still that under that theory, there was no proof, no evidence in the record to show that that's what was being done in this matter. Like the one, there was one controlled by that was orchestrated by the investigators here. At no time was any gun saw, shown, any gun used or any of this, there's just no indication that these guns were ever used by Mr. Heron or that he, from our position, actually knew those guns were present in the house, in the residence. There's testimony that they're his guns. There's testimony, disputed testimony from Mr. Spencer, who was a defendant in his own case, who said, I traded these guns for crack cocaine. The court can rely on that, right, if it wants? I believe they can, yes, Your Honor. So if it's his guns, he presumably knows they were in his house. Well, that's, again, that's something that's disputed about what he knew and whether or not they were actually his guns. Your red light is on, so you are out of time for the moment. Good morning. May it please the court. James Powell for the United I think they were adequately covered in my brief, though in my subsequent research, I found that my research was lacking in some areas. Regarding this last issue that counsel was addressing regarding the application of the enhancement for in connection with, I had originally argued in the sentencing, at the first sentencing hearing, that what had basically occurred was not the possession in relation to the fortress theory, but that it was in furtherance of a drug trafficking crime, likening it to the firearms being cashed that would be used to purchase something as the drugs. And there was a case that went to the Supreme Court on a 924C, and the issue that they were addressing was the use. And there was no use of the firearms in the evidence in this case, but I was arguing that it was in furtherance of. That wasn't addressed further. Nobody had any case law on that. And since then I've found that the case in this court, the United States versus Frederick, 406 Fed Third 754, dealt exactly with that, where the acquisition of the firearms in exchange for drugs was held to be in furtherance of a drug trafficking crime in the context of 924C. And I would submit that that same type of analysis would apply to the application of the 2K2.1B6 enhancement for. What did the district court rely on? Initially, we, after the first sentencing, well, to answer your question directly, it was the fortress theory. They relied on the fortress theory. Yes, sir. And he goes. Affirm that on a different ground now? I think it can be affirmed on either. What's the theory for affirming it on the ground that the district court relied on? The court went into a lengthy explanation that connected the, that showed the connection of the possession of the firearms and the ammunition in conjunction with the drugs that were recovered from the. Is that is that clearly erroneous or is that not clearly erroneous? I would say it's certainly not clearly erroneous. What's the basis for that conclusion? The proximity of the guns to the drugs. There was. How close was it? Ammunition was in the kitchen with the drugs, located next to each other. Bullets and drugs, but no guns? No guns at that location, but the caliber of the caliber of at least one of the firearms that were recovered. Where were the firearms? They were upstairs or downstairs? There were two pistols in a hall closet, one of which was loaded, and then the rest of the pistols were in a bag in an upstairs bedroom. Those were pistols upstairs in the bag? Yes, sir. So what, what, do you have cases which say that, you know, a loaded pistol on the same floor as drug paraphernalia is enough, is enough, or do the cases like that say it's not enough? There is a case, and I can't cite it offhand, and I don't know whether it's in my briefs, that, that where it, that's the, the, the basis of, I think, the fortress theory is that not necessarily was the firearm used in the drug transaction or it was possessed in furtherance of the drug transaction. Fortress theory is still good law in this circuit on, in cases like this? I believe so, yes, sir. So well, a concession of weakness, arguably, to be arguing something that you never argued when you have a winning argument that was argued. But I was, I was adding that as an addition to the fortress theory you're on, right, was, it was a theory that I think... The opposing counsel says just having a gun and drugs in the same house is not enough. That is correct. You're saying there's more here because of the number of guns or the, or the closeness or what is there that's more here? The proximity of the guns to the drugs, the accessibility of the loaded firearm in the hall closet, the drugs found within walking distance, short distance from the hall closet in the bedroom where there also was ammunition, and as well as the ammunition with the drugs in the kitchen. So this is a factual determination to be made by the fact finder. Yes, sir. I think we have your argument well in hand unless you have more argument. No, your honor, I think it's there and I expected the more contentious issue to be the affidavit of complaint or the affidavit for the search warrant, but I think the affidavit was clearly adequate based on the law of the circuit, so I have nothing further then. Thank you. Any rebuttal? All right, thank you very much. The case is submitted and you may...